**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | |
|---|---|
| **COLLEEN HANLEY, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| **v.** ) | **Civil No. 4:06cv71** |
| ) | |
| **HAND 'N HEART, L.L.C., et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |
| **JAJUAN KENDALL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil No. 4:06cv143** |
| ) | |
| **HOPE IN HOME CARE, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**OPINION & ORDER**

The Fair Labor Standards Act ("FLSA") prescribes the federal minimum wage and the

maximum hours an employee may work per week before he or she is entitled to overtime wages.

29 U.S.C. §§ 206 & 207.  The FLSA excludes many classes of employees from these minimum

wage and maximum hour requirements, including "any employee employed in domestic service

employment to provide companionship services for individuals who (because of age or infirmity)

are unable to care from themselves (as such terms are defined and delimited by the regulations of

the Secretary [of Labor])."  29 U.S.C. § 213(a)(15).  The Department of Labor ("DOL")

promulgated a regulation expressly applying § 213(a)(15)'s exclusion to employees of third-

party employers, who are employers other than the family or household in need of the companionship services.  29 C.F.R. § 552.109(a).  The validity of § 552.109(a) is at issue in the above matters.

## I.  Factual and Procedural Background

### A.  4:06cv71

On May 26, 2006, Plaintiff Colleen Hanley filed a Collective Action Complaint ("CAC") against Defendants, which alleged several violations of the FLSA and a common law claim of unjust enrichment.  Doc. 1.  Plaintiff alleged that the FLSA required Defendants to pay Plaintiff her regular hourly rate for time spent traveling and for time spent waiting for assignments.  CAC at 2-3.  Plaintiff also alleged that the FLSA required Defendants to compensate Plaintiffs at time-and-a-half overtime wages for hours Plaintiff worked in excess of forty (40) hours per week.  Id. On November 6, 2006, Plaintiffs Francelia Roberts and Lequetta Bottoms, also employed by Defendant, joined Plaintiff in her action.  Doc. 18.

This matter came before the Court on Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment (Doc. 3), Plaintiffs' Motion for Collective Action Certification and Court-Facilitated Notice (Doc. 6), and Plaintiffs' Motion for Partial Summary Judgment (Doc. 9).  At a hearing on December 1, 2006, Plaintiffs' counsel represented to the Court that no material facts were in dispute regarding the application of 29 C.F.R. § 552.109(a), and the parties indicated that they wished the Court, at this stage of the proceedings, to limit the Court's consideration of the pending motions Plaintiffs' claims for overtime wages and the

validity of 29 C.F.R. § 552.109(a).[1]  On December 1, 2006, Plaintiffs sought to amend the CAC

and to voluntarily dismiss their unjust enrichment claim without prejudice.

### B.  4:06cv143

On November 9, 2006, Plaintiff Jajuan Kendall filed a Collective Action Complaint, also

alleging that the FLSA required Defendants to pay Plaintiff her regular hourly rate for time spent

traveling and for time spent waiting for assignments.  Civil No. 4:06cv143, Doc. 1 at 2-3.

Plaintiff also alleged that the FLSA required Defendants to compensate Plaintiffs at time-and-a-

half overtime wages for hours Plaintiff worked in excess of forty (40) hours per week.  Id.  Prior

to the filing of a responsive pleading, Plaintiff amended her complaint as a matter of right to

remove reference to an unjust enrichment claim similar to the one withdrawn in 4:06cv71.

As was the case in 4:06cv71, the parties have moved for partial summary judgment as to

Plaintiff Kendall's overtime claims.  Docs. 4 & 7.  The parties have stipulated that the sole legal

issue before the Court in both actions is identical, that this sole issue is "[w]hether the

'companion services' exemption of 29 C.F.R. § 552.109(a) applies to and is valid and

enforceable against third-party employees such as Plaintiffs," and that this issue may be decided

without a hearing in 4:06cv143.  Joint Stipulations of the Parties (Doc. 28) 2 & 3.

### II.  Consolidation of the Actions

A court faced with pending actions involving a common question of law or fact may:

> order a joint hearing or trial of any or all the matters in issue in the actions; . . . order
> all the actions consolidated; and . . . make such orders concerning proceedings

---

[1] This Opinion and Order therefore will not address Plaintiffs' claims that the FLSA
requires Defendants to compensate Plaintiffs for time spent traveling and for time spent awaiting
Defendants' instructions.  Nor will this Opinion and Order address Defendants' motion to the
extent it seeks to dismiss Defendants Michael and Linda Lanning from this action.

therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a) ("Rule 42(a)").  Courts have "broad discretion" to consolidate cases under Rule 42(a).  A/S J. Ludwig Mowinckles Rederi v. Tidewater Const. Co., 559 F.2d 928, 933 (4th Cir. 1977).  As the parties have represented to the Court that these actions involve common legal questions, it is **ORDERED** that Hanley, et al. v. Hand 'N Heart, et al., Docket No. 4:06cv71, be **CONSOLIDATED** with Kendall v. Hope in Home Care, et al., Docket No. 4:06cv143, with Hanley, et al. v. Hand 'N Heart, et al., Docket No. 4:06cv71, to serve as the lead case.

### III.  Unjust Enrichment Claim and Amendment of Complaints

In Civil Docket No. 4:06cv71, Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment asked the Court dismiss Plaintiffs' unjust enrichment claim.  Doc. 4 at 20. Defendants argued that the FLSA preempted Plaintiffs' common law unjust enrichment claims. Id.  Plaintiffs, without conceding the issue of preemption, sought to voluntarily withdraw their claim for unjust enrichment in the interest of "simplifying the issues at bar."  Doc. 8 at 13. Plaintiffs also submitted an Amended Complaint ("AC") that omitted Plaintiffs' unjust enrichment claim.

A motion to dismiss is not a responsive pleading for the purposes of Federal Rule of Civil Procedure 15(a).  Because Defendants only asked that Plaintiffs' unjust enrichment claims be dismissed, and because the narrowing of the issues in dispute would serve the efficient administration of justice, the Court **DISMISSED** Plaintiffs' unjust enrichment claims without prejudice, **GRANTED** Plaintiffs leave to file their Amended Complaint, and **ORDERED** that Plaintiffs' Amended Complaint be filed as of **December 1, 2006**.

As the parties have agreed to allow Plaintiffs to further amend their complaint in

4:06cv71, Plaintiffs are hereby **GRANTED** leave to file their Second Amended Complaint.

Joint Stipulations of the Parties 1.  Plaintiffs shall have eleven (11) days from entry of this

Opinion and Order in which to submit their Second Amended Complaint in 4:06cv71.  The Clerk

is hereby **REQUESTED** to file Plaintiffs' Second Amended Complaint upon its timely receipt.

### IV.  FLSA Overtime Claims

### A.  Legal Standards

### 1.  Summary Judgment

Entry of summary judgment is proper when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. ("Rule") 56(c).

### 2.  Enforcement of Administrative Regulations

The standard of review applied to administrative regulations depends on whether the

regulation at issue is legislative or interpretive.  Walton v. Greenbrier Ford, Inc., 370 F.3d 446,

452 (4th Cir. 2004) (citing Pelissero v. Thompson, 170 F.3d 442, 446 (4th Cir.1999)).

"Legislative regulations are those in which 'Congress has explicitly left a gap for the agency to

fill, [thus] there is an express delegation of authority to the agency to elucidate a specific

provision of the statute by regulation.'"  Id. (citing Chevron U.S.A., Inc. v. Natural Res. Def.

Council, Inc., 467 U.S. 837, 843-44 (1984)).  Legislative regulations are afforded "'controlling

weight unless they are arbitrary, capricious, or manifestly contrary to the statute.'"  Id. (quoting

Chevron at 844).

Interpretive regulations "'clarify ambiguous terms found in the statute or explain how a

provision operates.'"  Id. (quoting Pelissero at 446).  Interpretive regulations "may sometimes function as precedents," but they are not entitled to Chevron deference "as a class."  United States v. Mead Corp., 533 U.S. 218, 232 (2001).  Interpretive regulations are nonetheless afforded "'considerable weight,'" Walton at 452 (quoting Chevron at 844), and will be upheld "'if they implement the congressional mandate in a reasonable manner.'"  Id. (citing, inter alia, Pelissero at 446; Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944) (holding that the DOL's regulations interpreting the FLSA "constitute a body of experience and informed judgment to which courts . . . may properly resort for guidance")); see also Mining Energy, Inc. v. Director, Office Of Workers' Compensation Programs, 391 F.3d 571, 575 n.3 (4th Cir. 2004) (citing, inter alia, Walton at 454).  If an interpretive regulation is made without notice and comment rulemaking, or is not the result of a formal adjudicative process, then such interpretive regulations are entitled to deference "only to the extent that the interpretation has the power to persuade."  See U.S. Dept. of Labor v. North Carolina Growers Ass'n, 377 F.3d 345, 353-54 (4th Cir. 2004) (citing, inter alia, Skidmore).  In considering such an interpretive regulation, a court is to consider "'the thoroughness evident in [the agency's] consideration, the validity of [the agency's] reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade.'"  Id. (citing Skidmore at 140).  These considerations are sometimes referred to as "Skidmore" (as opposed to Chevron) deference.

The agency's own administrative practice in applying a statute may also be eligible for Chevron deference.  In Mead the Supreme Court stated that:

> We hold that administrative implementation of a particular statutory provision qualifies for Chevron deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.

> Delegation of such authority may be shown in a variety of ways, as by an agency's power to engage in adjudication or notice-and-comment rulemaking, or by some other indication of a comparable congressional intent.

533 U.S. 218, 226-27 (2001).  While the Supreme Court ultimately determined that the agency's practice in Mead was not entitled to Chevron deference, the Supreme Court remanded the case in light of the possibility that the agency's practice would still be entitled so some deference under Skidmore's power-to-persuade test.  Id. at 227.  The fact that an agency's administrative practice may have vacillated over time may inform a court's review of the agency's implementation, but does not necessarily deprive the regulation of Chevron deference.  E.E.O.C. v. Seafarers Intern. Union, 394 F.3d 197, 201 (4th Cir. 2005) (citing, inter alia, Chevron at 863-64).

### 3.  Notice and Comment Rulemaking

A regulation not promulgated by the notice and comment process proscribed by the Administrative Procedures Act cannot be given the deference due a "legislative" rule; rather, such a regulation is to be considered interpretive in nature.  United States v. Ellen, 961 F.2d 462, 466 (4th Cir. 1992).  See Manufactured Housing Institute v.EPA, 467 F.3d 391, 399 (4th Cir. 2006) ("MHI v. EPA") (citing Ellen at 466); 5 U.S.C. § 553 (prescribing agency notice and comment procedures).

The fact that a promulgated regulation differs substantively from the proposed regulation, however, does not necessarily invalidate the regulation.  MHI v. EPA at 400; see Int'l Harvester Co. v. Ruckelshaus, 478 F.2d 615, 632 (D.C. Cir. 1973) ("The requirement of submission of a proposed rule for comment does not automatically generate a new opportunity for comment merely because the rule promulgated by the agency differs from the rule it proposed, partly at least in response to submissions.").  The notice-and-comment process is sufficient so long as the

adopted regulation is a "'logical outgrowth of the notice and comment[s]' . . . and not . . . a situation where the final rule 'reaches a conclusion exactly opposite to that proposed.' " <u>MHI v. EPA</u> at 400 (quoting <u>Chocolate Mfrs. Ass'n of the United States v. Block</u>, 755 F.2d 1098, 1103 & 1105 (4th Cir. 1985)).  In determining whether an adopted regulation is a "logical outgrowth" of the proposed regulation, courts are to consider the language of the agency's request for comments and whether the notice and proposed regulation alerted the public to the issues at stake.  <u>See</u> <u>MHI v. EPA</u> at 399-400.

### B.  The Fair Labor Standards Act

### 1.  Overview

The Fair Labor Standards Act ("FLSA") was enacted in 1938 and has been amended on numerous occasions.  <u>See</u> 29 U.S.C.A. § 201.  The FLSA prescribes the federal minimum wage and the maximum hours an employee may work per week before he or she is entitled to overtime wages.  29 U.S.C. §§ 206 & 207.  Overtime wages are not less than one and one-half times "the regular rate at which [an employee] is employed."  29 U.S.C. § 207(a)(1); <u>see</u> 29 U.S.C. § 207(e) (defining "regular rate").  Employees may bring a private action against employers who violate section 206 or 207 to recover unpaid minimum wages, unpaid overtime compensation, and an additional amount equal to these recoveries as liquidated damages.  29 U.S.C. § 216(b).  A court may also award such employees their costs and reasonable attorneys' fees.  <u>Id.</u>

The minimum wage and maximum hour prescriptions apply generally to "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce, or [are] employed in an enterprise engaged in commerce or in the production of goods for commerce . . . ."  29 U.S.C. §§ 206(a) & 207(a).  An "enterprise engaged in commerce or in the

production of goods for commerce," hereinafter referred to as a "covered enterprise," is an enterprise that, in pertinent part,

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) . . . .

29 U.S.C. § 203(s)(A).[2]  Prior to 1974, the threshold amount was $250,000.  See 29 U.S.C. § 203(s)(A)(ii) (1970).  While the FLSA has excluded many classes of employees from these minimum wage and maximum hour requirements since its inception in 1938, no exclusion applied to domestic service employees prior to 1974.  See 29 U.S.C.A. § 213.  Therefore, the FLSA applied to domestic service employees prior to 1974 to the extent that such employees belonged to the general class of employees covered by § 203(s).  FLSA coverage for such employees was therefore determined by the scope of their employer's presence in the national economy, rather than the nature of the services provided by the employee.  This focus on the employer's national presence was consistent with Congress's enactment of the FLSA pursuant to

---

[2] The FLSA also applies to each enterprise that

(B) is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit); or

(C) is an activity of a public agency.

29 U.S.C. § 203(s)(B) & (C).

9

the Commerce Cause of the United States Constitution.  See 29 U.S.C. § 202 (1938).

## 2. 1974 Amendments to the FLSA

In 1974 Congress found "that the employment of persons in domestic service in households affects commerce," Pub. L. No. 93-259, § 7(a) (Apr. 8, 1974); 29 U.S.C. § 202(a) (1974), and changed the circumstances under which domestic service employees were covered by the FLSA.  The FLSA was amended to specify that domestic service employees were generally covered by the overtime provisions.  Pub. L. No. 93-259, § 7(b)(2) (Apr. 8, 1974); 29 U.S.C. § 207(l).[3]  Congress, however, specifically excluded from the FLSA "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care from themselves (as such terms are defined and delimited by the regulations of the Secretary [of Labor])."  Pub.L. 93-259, § 7(b)(3) (Apr. 8, 1974); 29 U.S.C. § 213(a)(15).  After 1974, coverage for domestic service employees was therefore driven by the nature of the service provided by the employees, rather than the scope of their employer's economic activity.  The 1974 amendments to the FLSA did not define the term "domestic service," nor has any subsequent statutory amendment done so.  See 26 U.S.C.A. § 203.

Several reasons prompted members of Congress to revisit the FLSA's treatment of domestic service employees.  Among these was a concern for the ability of working adults to obtain companionship services for an elderly or infirm individual living in their home.  See

---

[3] Although the minimum wage provisions of the FLSA are not relevant on the motions now before the Court, the FLSA was also amended to prescribe the minimum wage for certain domestic service employees.  See Pub. L. No. 93-259, § 7(b)(1) (Apr. 8, 1974); 29 U.S.C. § 206(f)(1) & (2).

Department of Labor Wage and Hour Advisory Memorandum No. 2005-1 ("2005 Wage & Hour

Memo.") at 2 (citing 119 Cong. Rec. at 24,797 (Sen. Dominick); id. at 24,798 (Sen. Johnston);

id. at 24,801 (Sen. Burdick)).  Congressional committee reports addressing the companionship

services exclusion therefore addressed the nature of the domestic service and where the service

was to be rendered.  See 2005 Wage & Hour Memo. at 2 (citing H.R. Rep. No. 93-913, at 33

(1974) (characterizing excluded employees as those "employed in the capacity of companion");

S. Rep. No. 93-690, at 20 (1974) ("It is not, however, the Committee's intent to include within

the term 'domestic service' such activities as casual babysitting and acting as a companion.");

119 Cong. Rec. 24,801 (1973) (Sens. Burdick and Williams as to the tasks performed by

companions); S. Rep. No. 93-300, at 22 (1973) ("The domestic service must be performed in a

private home which is a fixed place of abode of an individual or family"); S. Rep. No. 93-690, at

20 (1973)).  The legislative history also evidences a desire to limit the companionship services

exclusion to services provided in private family households.  The committee reports distinguish

the excluded services from included services provided by trained nurses or in boarding or

lodging homes.  See H.R. Conf. Rep. No. 93-413, at 27 (1973) (the companionship exclusions

does not apply to employees providing trained service, such as nurses); 119 Cong. Rec. at 24,799

("A dwelling used primarily as a boarding or lodging house for the purpose of supplying such

services to the public, as a business enterprise, is not a private home.") (statement of Sen.

Williams); S. Rep. No. 93-300, at 22 ("a dwelling house used primarily as a boarding or lodging

house for the purpose of supplying such services to the public, as a business enterprise, is not a

private home."); S. Rep. No. 93-690, at 20 (same); H.R. Rep. No. 93-913, at 33 (same); see also

29 U.S.C. § 203(s)(B) (specifically including under the FLSA employees of "an institution

primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on

the premises of such institution . . . .") (enacted by Pub.L. 87-30, § 2(c), (May 5, 1961)).

### 3.  Regulations Promulgated Pursuant to the 1974 Amendments

The FLSA authorized the DOL to "define and delimit" the terms "domestic service

employment" and "companionship services" for the purposes of the companionship services

exclusion.  29 U.S.C. § 213(a)(15).  The DOL also was given authority under the 1974

amendments "to prescribe the necessary rules, regulations, and orders with regards to the

amendments made by this Act."  Pub. L. No. 93-259, § 29(b) (Apr. 8, 1974).

The DOL provided public notice of its proposed regulations on October 1, 1974.

Application of the [FLSA] to Domestic Service Employees, 39 Fed. Reg. 35,382-35,385 (Oct. 1,

1974) (codified at 29 C.F.R. § 552).  Proposed Part 552 of Title 29 of the Code of Federal

Regulations was divided into Subpart A, "General Regulations," and Subpart B,

"Interpretations."  39 Fed. Reg. 35383.  The DOL described Subpart A as "defining and

delimiting . . . the terms 'domestic service employee,' 'employee employed on a casual basis in

domestic service employment to provide babysitting services' and 'employment to provide

companionship services for individuals who (because of age or infirmity) are unable to care for

themselves.'"  39 Fed. Reg. 35382.  Subpart B was described as "a statement of general policy

and interpretation concerning the application of the [FLSA] to domestic service employees."  Id.

The DOL invited interested persons to "submit written comments, suggestions, data or

arguments concerning the following proposals" by November 4, 1974.  Id.

Third-party employment was addressed under an "interpretation."  Third Party

Employment, 39 Fed. Reg. 35,385 (Oct. 1, 1974).  As proposed in 1974, the regulations would

limited the companionship services exclusion to the third-party employers who were not

"covered enterprises" as defined by the FLSA:

> Employees who are engaged in providing babysitting and companionship services and who are employed by an employer other than the families or households using such services, are not exempt under [29 U.S.C. § 213(a)(15)] of the Act if the third party employer is a covered enterprise meeting the tests of [29 U.S.C. §§ 203(r) & (s)(1)]. This results from the fact that their employment was subject to the Act prior to the 1974 Amendments and it was not the purpose of those Amendments to deny the Act's protection to previously covered domestic service employees.

Id.  The comments received regarding the third-party employer exemption persuaded the DOL to

adopt a regulation different than the one proposed:

> The one major change in Part 552 is in § 552.109 which deals with "third party employment."  This section as originally proposed would not have allowed the [29 U.S.C. § 213(a)(15)] . . . exemption for employees who, although providing companionship or live-in domestic services, are employed by an employer or agency other than the family or household using their services.[4]  On further consideration, [the DOL] concluded that these exemptions can be available to such third party employers since they apply to "any employee" engaged "in" the enumerated services. This interpretation is more consistent with the statutory language and prior practices concerning other similarly worded exemptions.

Application of the [FLSA] to Domestic Service Employees, 40 Fed. Reg. 7404-7405 (Feb. 20,

1975).  Accordingly, section 552.109 was split into three subsections, the first of which stated:

> Employees who are engaged in providing companionship services, as defined in § 552.6, and who are employed by an employer or agency other than the family or household using their services, are exempt from the Act's minimum wage and overtime pay requirements by virtue of [29 U.S.C. § 213(a)(15)].  Assigning such an employee to more than one household or family in the same workweek would not defeat the exemption for that workweek, provided that the services rendered during each assignment come within the definition of companionship services.

---

[4] The Court notes that the proposed § 552.109(a) was not so broad as to exclude all third-party employers.  Only third-party employers who were covered enterprises would have been considered outside § 213(a)(15)'s exemption.  See Third Party Employment, 39 Fed. Reg. 35,385 (Oct. 1, 1974).

Third Party Employment, 40 Fed. Reg. 7,407 (Feb. 20, 1975) (codified at 29 C.F.R. §
552.109(a)).  The rest of § 552.109 is not pertinent to the present action, as it concerned the
application of exclusions to babysitters and to live-in domestic service employees.  Id. (codified
at 29 C.F.R. § 552.109(b) & (c)).

Section 552.109(a) has not been amended since its adoption in 1975.  Congress has
amended the FLSA on several occasions since 1974 without altering the statutory exemption at
29 U.S.C. § 213(a)(15) and without addressing the impact of third-party employment on
§ 213(a)(15)'s applicability.  See 29 U.S.C.A. § 213.  The DOL proposed amendments to
§ 552.109(a) in 1993 and 2001, but no action was taken on the 1993 proposal and the 2001
proposal was abandoned in light of the public comment received.  See Application of [the FLSA]
to Domestic Service, 58 Fed. Reg. 69,310 (Dec. 30, 1993), 66 Fed. Reg. 5,481 (Jan. 19, 2001), &
67 Fed. Reg. 16,668 (Apr. 8, 2002).

Several other regulations promulgated under the 1974 amendments to the FLSA speak to
the companionship services exclusion.  The regulations state that "[t]he definitions required by
29 U.S.C. § 213(a)(15)] are contained in [29 C.F.R.] §§ 552.3, 552.4, 552.5 and 552.6," 29
C.F.R. § 552.2(c), all of which are listed as "general regulations" under Part 552, Subpart A, of
Title 29 of the Code of Federal Regulations.  Of these "general regulations," sections 552.3 and
552.6 are pertinent to the present consolidated actions.[5]  Section 552.3 defines "domestic service
employment":

> As used in [29 U.S.C. § 213(a)(15)], the term domestic service employment refers
> to services of a household nature performed by an employee in or about a private

---

[5] Sections 552.4 and 552.5 relate to the definition of "babysitting services" for the
purposes of 29 U.S.C. § 213(a)(15).

home (permanent or temporary) of the person by whom he or she is employed.  The term includes employees such as cooks, waiters, butlers, valets, maids, housekeepers, governesses, nurses, janitors, laundresses, caretakers, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use.  It also includes babysitters employed on other than a casual basis. This listing is illustrative and not exhaustive.

29 C.F.R. § 552.3.  Section 552.6 defines "companionship services" for the aged or infirm:

As used in [29 U.S.C. § 213(a)(15)] of the Act, the term companionship services shall mean those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs.  Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services.  They may also include the performance of general household work: Provided, however, that such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked.  The term "companionship services" does not include services relating to the care and protection of the aged or infirm which require and are performed by trained personnel, such as a registered or practical nurse.  While such trained personnel do not qualify as companions, this fact does not remove them from the category of covered domestic service employees when employed in or about a private household.

29 C.F.R. § 552.6.

Two "interpretations" under Subpart B of Part 552 are relevant to the present action.

Section 552.109(a), as discussed above, provides the third-party employer exemption at issue in these actions.  The second relevant "interpretation" is § 552.101(a), which states that:

The definition of domestic service employment contained in § 552.3 is derived from the regulations issued under the Social Security Act (20 CFR § 404.1057) and from "the generally accepted meaning" of the term.  Accordingly, the term includes persons who are frequently referred to as "private household workers."  See S. Rep. 93-690, p. 20.  The domestic service must be performed in or about the private home of the employer whether that home is a fixed place of abode or a temporary dwelling as in the case of an individual or family traveling on vacation.  A separate and distinct dwelling maintained by an individual or a family in an apartment house, condominium or hotel may constitute a private home.

29 C.F.R. § 552.101(a).[6]  Section 552.101(b) states that employees working in a boarding or rooming house are not engaged in domestic service employment, and § 552.101(c) concerns the calculation of the hours worked by domestic service employees.  Of the relevant "General Regulations" and "Interpretations," only § 552.109(a) differed materially from its proposed version.  See 40 Fed. Reg. 7,404-7,405 (summarizing the impact of public comment on the promulgated regulations).

### C.  Discussion

On December 1, 2006, the Court held a hearing in 4:06cv71 and announced its ruling from the bench.  This Opinion and Order sets forth the Court's reasoning in 4:06cv71.  Per the parties' stipulations, the Court hereby **ADOPTS** the following reasoning in 4:06cv143 as well.

It was not necessary for the Court to determine whether 29 C.F.R. § 552.109(a) is a legislative or an interpretive regulation, as the Court **HELD** that 29 C.F.R. § 552.109(a) is valid and enforceable even under the more searching Skidmore standard of deference applicable to interpretive regulations.

### 1.  **Skidmore** Deference

In considering an interpretive regulation, a court is to consider "'the thoroughness

---

[6] During Congress's consideration of the 1974 amendments, the Department of Labor submitted the following definition of "private household workers":

> [A]nyone aged 14 and over working for wages, including pay-in-kind, in or about a private residence who was employed by (1) a member of the household occupying that residence or (2) a household service business whose services had been requested by a member of the household occupying that residence.

See 2005 Wage & Hour Memo. at 6 (citing 1973 and 1974 Department of Labor reports).  See also 119 Cong. Rec. 24,796 (Sen. Dominick) (quoting the above definition).

16

evident in [the agency's] consideration, the validity of [the agency's] reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade.'" U.S. Dept. of Labor v. North Carolina Growers Ass'n, 377 F.3d 345, 353-54 (4th Cir. 2004) (citing, inter alia, Skidmore at 140).  Considering these factors, the Court **HELD** that § 552.109(a) has the power to persuade for the reasons set forth below.

### a.  Thoroughness and Validity of the Agency's Consideration

The DOL thoroughly considered the question of whether or not to apply 29 U.S.C. § 213(a)(15)'s companionship services exception to third-party employers and the DOL's reasoning was valid.  The DOL proposed in 1974 to limit the exclusion to third-party employers who were not "covered enterprise[s]" under the FLSA.  Third Party Employment, 39 Fed. Reg. 35,385 (Oct. 1, 1974).  The DOL had concluded that such previously-covered enterprises should not now be excluded under 29 U.S.C. § 213(a)(15) because "it was not the purpose of [the 1974] Amendments to deny the Act's protection to previously covered domestic service employees." Id.  The DOL subsequently received comments from "individuals, law firms, social service groups (both public and private), employers of working mothers, the Women's Bureau of the U.S. Department of Labor, the AFL-CIO, public welfare departments of State and local governments, and business firms providing domestic service workers."  Application of [the FLSA] to Domestic Service, 40 Fed. Reg. 7,404 (Feb. 20, 1975).  "On further consideration," the DOL concluded that the companionship services exclusion "can be available to such third party employers since they apply to 'any employee' engaged 'in' the enumerated services.  This interpretation is more consistent with the statutory language and prior practices concerning other similarly worded exemptions."  Id. at 7,405.  This is not an instance where the regulation was

promulgated without explanation; rather, the promulgated regulation was the result of the DOL's consideration of public comment, the text of the statute, and the interpretation of other similarly-worded exclusions.  See id.  Such considerations are valid, and the DOL thoroughly considered the public comments it received in response to its proposed regulation.

### b. Consistency with Earlier and Later Pronouncements

While some earlier and later pronouncements are inconsistent with the adopted version of 29 C.F.R. § 552.109(a), the inconsistencies do not deprive § 552.109(a) of its power to persuade. The proposed 1974 regulation was at least partially inconsistent with the adopted regulation, as the proposal declined to extend the companionship services employer exemption to third-party employers who would have been "covered enterprises" prior to the 1974 amendments.  39 Fed. Reg. 35,385.  The proposed regulation would, however, have exempted third-party employers who were not "covered enterprises."  Id.

The DOL twice proposed to amend § 552.109(a).  In 1993 the DOL proposed to limit the companionship services exemption to third-party employers that entered into a joint-employer relationship with the family or household in need of the services.  Application of [the FLSA] to Domestic Service, 58 Fed. Reg. 69,310 (Dec. 30, 1993).  However, the DOL received few public comments on the 1993 proposal and failed to further act on its proposal.  See Application of [the FLSA] to Domestic Service, 66 Fed. Reg. 5,481 (Jan. 19, 2001) (discussing the inadequacy of public comment on the 1993 proposed amendment).

In 2001 the DOL proposed to remove the third-party exemption altogether.  Id.  The DOL, however, subsequently abandoned the proposal:

> In the proposed rule, the Department had concluded that there would be little
> economic impact on affected entities if such workers were not exempt from the

FLSA's minimum wage and overtime pay requirements.   However, numerous [commentators] on the proposed rule, including multiple government agencies such as the Small Business Administration and the Department of Health and Human Services, seriously called into question the Department's conclusion that there would be little economic impact.   Based on its review of the rulemaking record as a whole, the Department has decided to withdraw the proposed rule and terminate the rulemaking action.

Application of [the FLSA] to Domestic Service, 67 Fed. Reg. 16,668 (Apr. 8, 2002).   The DOL has since "repudiated and withdrawn" its grounds for proposing the 2001 amendment.   2005 Wage & Hour Memo. at 7.   While the proposal was inconsistent with § 552.109(a), the subsequent withdrawal of the proposed amendment and repudiation of the grounds advanced in support of the 2001 amendment are consistent with § 552.109(a).

Section 552.109(a) can also be read as inconsistent with other regulations contemporaneously adopted in 1974.   Sections 552.3 and 552.101(a) both define domestic service employees as, in part, those who perform services in the home of their employer.   See 29 C.F.R. §§ 552.3 & 552.101(a).   Such a definition could be read to deny third-party employers the benefit of the FLSA's companionship services exclusion.   However, § 552.109(a) is not the only domestic service regulation that it potentially inconsistent with §§ 552.3 and 552.101(a). Section 552.6, which defines "companionship services" for the purposes of the companionship services exemption, does not limit its application to companionship services provided in the home of the employer.   See 29 C.F.R. § 552.6.   Section 552.101(a) is itself internally inconsistent, because it includes "private household employees" in its definition of "domestic service employees."   Such "private household employees," unlike "domestic service employees" as defined in § 552.3, had been traditionally understood to include employees of third-party employers.   See 2005 Wage & Hour Memo. at 6 (discussing the definition of "private household

employees").

Nonetheless, these inconsistencies among DOL pronouncements and regulations do not deprive § 552.109(a) of its power to persuade.  First, there was no defect in the notice-and-comment process relative to § 552.109(a).  An agency's notice-and-comment process is proper if the adopted regulation is a "'logical outgrowth of the notice and comment[s]' . . . and not . . . a situation where the final rule 'reaches a conclusion exactly opposite to that proposed.' "  MHI v. EPA, 467 F.3d 391, 400 (citing Chocolate Mfrs. Ass'n of the United States v. Block, 755 F.2d 1098, 1103 & 1105 (4th Cir. 1985)).  The adopted § 552.109(a) was a "logical outgrowth" of the version proposed in 1974, as the proposed regulation notified affected parties that the applicability of § 213(a)(15) to third-party employers was at stake.  Cf. MHI v. EPA at 399-400 (courts are to consider the language of the agency's request for comments and whether the notice and proposed regulation altered the public to the issues at stake).  The notice for § 552.109(a) stated that the proposed regulations were to define the terms necessary to interpret § 213(a)(15) and were to set forth the DOL's policy in applying § 213(a)(15).  See Application of the [FLSA] to Domestic Service Employees, 39 Fed. Reg. 35,382 (Oct. 1, 1974).  The public's awareness of what was at stake is also evident from the fact that the public did, in fact, comment on the proposed § 552.109(a).  Cf. MHI v. EPA at 400 (citing the occurrence of public comment to show that the public was aware what was at stake).  Nor is excluding all third-party employers from the FLSA under 29 U.S.C. § 213(a)(15), as in the adopted regulation, "exactly opposite" to excluding all third-party employers who were not "covered enterprises," as in the proposed regulation.

Second, an agency's proposed reconsideration of a regulation does not suffice to deny the

existing regulation of the deference to which it is due.  Cf. MHI v. EPA at 400 (the fact that a promulgated regulation differs from the proposed regulation does not necessarily deprive the agency of the deference to which the promulgated regulation is entitled).  The DOL's 1993 and 2001 proposals to amend § 552.109(a) fail to deprive the regulation of its power to persuade, as each effort was abandoned and the DOL has expressly repudiated and withdrawn its reasons for its 2001 proposal.  2005 Wage & Hour Memo. at 7.

Third, the Court is to read a body of regulations "so as to give effect, if possible, to all of its provisions."  Jay v. Boyd, 351 U.S. 345, 360 (1956) (citation omitted); see Miller v. A.T.&T. Corp., 250 F.3d 820, 832 (4th Cir. 2001) ("Whenever possible, this court must reconcile apparently conflicting provisions.").  Sections 552.3 and 552.101(a) can be read as consistent with § 552.109(a), if they are read as primarily concerning the nature of the service considered to be "companionship services," rather than proscribing the identity of domestic service employee's employer.  Such a reading is consistent with the text and impact of the 1974 amendments.  The text of the amendments repeatedly refers to domestic service performed "in a household" without reference to the identity of the employer.  See Pub. L. 93-259 §§ 7(a), (b)(1) & (b)(2).  The amendments also operated to change the factor driving FLSA domestic service coverage from the scope of the employer's business to the nature of the work performed by the employee.  A harmonious reading of the regulations is therefore possible.  For the above reasons, the Court **HELD** that the inconsistencies regarding § 552.109(a) do not deprive the regulation of its power to persuade.

### c.  Other Persuasive Factors

Several other considerations enhance the persuasiveness of § 552.109(a).  The regulation

is consistent with the statutory text's unqualified exclusion of companionship services from the overtime and minimum wage requirements.  Section 552.109(a) thus serves to ensure that all domestic employees who provide companionship services will be treated similarly under the statute, regardless of the identity of their employer.  There is no reason to make a distinction between the care provided by someone employed directly by the infirm or elderly person (or their family) and the care provided by a third-party employer.  Such employees are providing the same service and there is no reason why one of them should be covered by the FLSA because they were hired by a third-party employer as opposed to the consumer directly.  The Court considers a consistent reading of the regulations to require that the FLSA either covers domestic employees providing companionship services or it does not.  Exempting all such employees from the FLSA is consistent with the 1974 amendments' focus on the nature of the services provided, rather than the scope of the employer's business.

The companionship services exception also promotes the availability of companionship services.  Congress did not intend to place a heavy burden on working adults who are responsible for elderly or infirm relatives and who would be unable to afford domestic companionship services at overtime wages.  See 2005 Wage & Hour Memo. at 2 (citing 119 Cong. Rec. at 24,797 (Sen. Dominick); id. at 24,798 (Sen. Johnston); id. at 24,801 (Sen. Burdick); Opinion Letter, Wage & Hour Div., Dep't of Labor, WH-368, 1975 WL 40991 (Nov. 25, 1975) ("Congress was mindful of the special problems of working fathers and mothers who need . . . a person to care for an elderly invalid in their home.")).  Senators Dominick and Johnston agreed that the exemption was necessary to avoid making domestic companionship services unaffordable to working class adults, who would then be required to care for their

elderly or invalid family members on their own time and thus be unable to maintain employment themselves. 119 Cong. Rec. at 24,797-24,798. In earlier debate on the application of the federal minimum wage to companionship services, Senators Taft and Dominick feared that FLSA coverage of companionship services would force families to resort to the services of a nursing home. 118 Cong. Rec. 24,715. While the DOL initially proposed to limit the exception to employers not otherwise covered by the FLSA, both the 1974 proposal and the regulation adopted in 1975 created a class of domestic service employees who were not subject to the FLSA if they were providing companionship services. The economic impact of applying the FLSA to companionship services also persuaded the DOL to abandon its 2001 proposal to deny the companionship exemption to third-party employers altogether. See Application of the [FLSA] to Domestic Service, 67 Fed. Reg. 16,668 (Apr. 8, 2002) ("[N]umerous commentators on the proposed rule, including multiple government agencies such as the Small Business Administration and the Department of Health and Human Services, seriously called into question the Department's conclusion that [the proposal would have] little economic impact."). It is understandable that these considerations were persuasive to the DOL, as they are certainly persuasive to the Court. To the extent that these concerns apply to families caring for their elderly or infirm, they also necessarily apply to the elderly and infirm themselves. If the elderly or infirm, who are likely on fixed or otherwise-limited incomes, can obtain companionship services by their own means, then this would further reduce the burdens on their families.

### d. Conclusion as to Regulation's Power to Persuade

For the reasons set forth above, the Court **HELD** that 29 C.F.R. § 552.109(a) is valid and

enforceable under the <u>Skidmore</u> standard of deference.[7]  Therefore, it was unnecessary for the

Court to determine whether § 552.109(a) is a legislative or interpretive regulation.[8]

_____

[7] The Second Circuit recently considered the enforceability of 29 C.F.R. §§ 552.6 & 552.109(a) in <u>Coke v. Long Island Care at Home, Ltd.</u>, 376 F.3d 118, 121-22 (2d Cir. 2004) ("<u>Coke I</u>").  The Second Circuit found that § 552.6 was entitled to <u>Chevron</u> deference and was enforceable, but that § 552.109(a) was only entitled to <u>Skidmore</u> deference and was "unpersuasive in the context of the entire statutory and regulatory scheme."  <u>Id.</u>
   While acknowledging that other courts had previously afforded § 552.109(a) <u>Chevron</u> deference, the <u>Coke I</u> court determined that the intervening Supreme Court decision in <u>Unted States v. Mead Corp.</u>, 533 U.S. 218 (2001), required the court "to apply a lesser degree of deference" to interpretive, as opposed to legislative, rules.  376 F.3d at 131 (citing <u>Mead</u>, 533 U.S. at 232 ("interpretive rules . . . enjoy no <u>Chevron</u> status as a class.")). The <u>Coke I</u> court then found that § 552.109(a) did not have the power to persuade under <u>Skidmore</u>.  376 F.3d at 133 (citing <u>Mead</u>, 533 U.S. at 236).  The court held that § 552.109(a) was contrary to Congress's purposes for modifying the FLSA in 1974; noted that third-party domestic services employers had been covered by the FLSA prior to 1974; characterized § 552.109(a) as "jarringly inconsistent with other regulations the DOL . . . promulgated under the FLSA . . . ."; and found that the DOL had admitted to an "internal contradiction" between § 552.3 and § 552.109(a) when proposing the abandoned 2001 amendment to § 552.109(a).  376 F.3d at 133-35.  The court further found the agency's reasoning in support of § 552.109(a) to be "inadequate," as the reasoning failed to explain the DOL's initial "about-face" following the 1974 notice-and-comment period.  <u>Id.</u> at 134.  The Supreme Court granted certiorari, vacated the opinion in <u>Coke I</u>, and remanded the matter for reconsideration in light of the DOL's 2005 Wage & Hour Memorandum.  <u>Long Island Care at Home, Ltd. v. Coke</u>, — U.S. —, 126 S.Ct. 1189 (2006).  On remand, the Second Circuit was not persuaded by the 2005 Wage & Hour Memorandum and renewed its holding in <u>Coke I</u>.  <u>Coke v. Long Island Care at Home, Ltd.</u>, 462 F.3d 48, 51-52 (2d Cir. 2006) ("<u>Coke II</u>").  On January 5, 2007, the Supreme Court granted certiorari in <u>Coke II</u>. <u>Long Island Care at Home, Ltd. v. Coke</u>, — S.Ct. —, 2007 WL 30550, at *1 (2007).
   This Court respectfully finds the Second Circuit's assessment of the validity of § 552.109(a) to be unpersuasive for the reasons set forth in this Order and Opinion.

[8] If § 552.109(a) is enforceable under <u>Skidmore</u> deference, then it would also satisfy the more-deferential <u>Chevron</u> standard.  Under <u>Chevron</u>, legislative regulations are afforded "'controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.'" <u>Walton v. Greenbrier Ford, Inc.</u>, 370 F.3d 446, 452 (4th Cir. 2004) (quoting <u>Chevron</u> at 844). The FLSA expressly excludes from coverage "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care from themselves (as such terms are defined and delimited by the regulations of the Secretary [of Labor])."  29 U.S.C. § 213(a)(15).  This statutory delegation is clear and unambiguous.  Title 29, section 552.109(a) of the Code of Federal Regulations closely parallels the statute by recognizing that domestic employees providing companionship services who are

### D.  Conclusion as to FLSA Overtime

For the reasons stated herein Defendants are **GRANTED** partial summary judgment on Plaintiffs' overtime claims in these consolidated actions.  Specifically, in 4:06cv71, Defendant's motion asking for summary judgment (Doc. 3) is **GRANTED** in part and Plaintiffs' motion for partial summary judgment (Doc. 9) is **DENIED** in part.  In 4:06cv143, Defendant's motion for partial summary judgment (Doc. 4) is **GRANTED** and Plaintiff's motion for partial summary judgment (Doc. 7) is **DENIED**.

### V.  Certification to the Fourth Circuit

Tile 28, United States Code, Section 1292(b) provides for interlocutory appeals under certain conditions:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

The Court hereby **CERTIFIES** the following question to the United States Court of Appeals for the Fourth Circuit:

(1)      Is 29 C.F.R. § 552.109(a) a valid and enforceable regulation?

The Court **HOLDS** that this question is a controlling question of law in the consolidated actions.

---

employed by third-parties are excluded from the FLSA.  Section 552.109(a) is also far from arbitrary and capricious for the same reasons, discussed above, that § 552.109(a) has the power to persuade.

The parties have also stipulated that it is so.  Joint Stipulations of the Parties 4.  The Court

**FINDS** that substantial ground exists for difference of opinion on this question in light of the

Second Circuit's decisions in <u>Coke I</u> and <u>Coke II</u> and the vacillation between the DOL's

proposals and the adopted regulation.  The Court notes that this controlling question also appears

to be an issue of first impression in this Circuit.  The Court **HOLDS** that immediate appeal from

the order may materially advance the ultimate termination of these consolidated actions, as the

parties have represented to the Court that the validity and enforceability of 29 C.F.R.

§ 552.109(a) is a central issue in both matters.  Joint Stipulations of the Parties 2 & 4.

The parties are **ADVISED** that they must make application to the Fourth Circuit,

requesting that the Fourth Circuit hear an interlocutory appeal on the certified question, within

ten (10) days of the entry of this Opinion and Order.  28 U.S.C. § 1292(b).

It is **ORDERED** that such an application to the Fourth Circuit by a party to these

consolidated actions shall **STAY** all proceedings in these consolidated actions until further order

of this Court.

## VI.  Conclusion

It is **ORDERED** that <u>Hanley, et al. v. Hand 'N Heart, et al.</u>, Docket No. 4:06cv71, be

**CONSOLIDATED** with <u>Kendall v. Hope in Home Care, et al.</u>, Docket No. 4:06cv143, and that

<u>Hanley, et al. v. Hand 'N Heart, et al.</u>, Docket No. 4:06cv71, be designated as the lead case.

It is further **ORDERED** that Plaintiffs' unjust enrichment claims in 4:06cv71 be

**DISMISSED** without prejudice, that Plaintiffs' Amended Complaint in 4:06cv71 be filed as of

**<u>December 1, 2006</u>**, and that Plaintiffs in 4:06cv71 are granted **LEAVE** to file their Second

Amended Complaint, within eleven (11) days from the entry of this order, should they be so

advised.

The Defendants in these consolidated actions are **GRANTED** partial summary judgment as to Plaintiffs' overtime claims under the FLSA, for the reasons set forth herein.  In 4:06cv71, Defendant's motion asking for summary judgment (Doc. 3) is **GRANTED** in part and Plaintiffs' motion for partial summary judgment (Doc. 9) is **DENIED** in part.  In 4:06cv143, Defendant's motion for partial summary judgment (Doc. 4) is **GRANTED** and Plaintiff's motion for partial summary judgment (Doc. 7) is **DENIED**.

The Clerk is further **REQUESTED** to mail a copy of this Opinion and Order to all counsel of record.

It is so **ORDERED**.


_____
/s/
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE


Norfolk, Virginia
January 22, 2007